**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

CONNIE SUE COGGINS,

    Plaintiff,

    v.

FRANK BISIGNANO, Commissioner of the
Social Security Administration,

    Defendant.

CAUSE NO.: 3:25-CV-793-TLS

**OPINION AND ORDER**

The Plaintiff Connie Sue Coggins seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. The Plaintiff argues that the Administrative Law Judge (ALJ) erred in evaluating the medical opinion evidence. For the reasons below, the Court finds that substantial evidence supports the ALJ's decision and that there is no basis to remand for further review.

**PROCEDURAL BACKGROUND**

On May 27, 2022, the Plaintiff applied for disability insurance benefits, alleging disability as of April 1, 2022. AR 288–94, ECF No. 14. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on February 22, 2024. AR 103. On April 30, 2024, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 100–20. On the Plaintiff's request for review, the Appeals Council remanded to the ALJ. AR 121–24. A second hearing before the same ALJ was held on March 13, 2025. AR 44–77. The ALJ issued a second unfavorable decision on April 24, 2025. AR 14–43. The Plaintiff sought review by the Appeals Council, which denied the request. AR 1–5. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496

(7th Cir. 2019). On September 18, 2025, the Plaintiff filed her Complaint [ECF No. 1] in this Court, seeking judicial review under 42 U.S.C. § 405(g). The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 16, 22, 25.

**THE ALJ'S DECISION**

For purposes of disability insurance benefits, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 404.1512.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity for the period from the alleged onset date of April 1, 2022, through her date last insured of December 31, 2024. AR 20.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of chronic lung failure, diabetes mellitus, obesity, obstructive sleep apnea, asthma,

Postural Orthostatic Tachycardia Syndrome (POTS), depressive disorder, and anxiety disorder. AR 20.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings [in appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 1.00, 3.02, 3.03, 4.00, 5.00, 11.00, 12.00, 12.04, 12.06. AR 21–24.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant can never climb ladders, ropes, or scaffolds or crawl. The claimant must avoid concentrated exposure to extreme temperatures (hot/cold), wetness, fumes, dust, odors, gases, poor ventilation, and hazards, such as unprotected heights. The claimant can understand, remember, and carry out simple instructions, can make judgments commensurate with functions of simple, repetitive tasks. She can have occasional interaction with coworkers, supervisors, and the general public but no tandem work or team tasks and is able to deal with changes in a routine work setting.

AR 24.

3

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff was unable to perform any past relevant work. AR 33–34.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of retail marker, cafeteria attendant, and routing clerk. AR 34–36.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex*

*rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, the Plaintiff argues that the ALJ made three errors in considering the medical opinion evidence related to her physical impairments. The Defendant responds that the ALJ's decision is supported by substantial evidence, and the Court agrees.

An ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a), (b). Medical opinions are evaluated using the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment

5

relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. *Id.* § 404.1520c(c)(1)–(5). The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. *Id*. § 404.1520c(a), (b)(2). Therefore, the ALJ must explain how the ALJ considered those two factors in making the disability decision. *Id*. § 404.1520c(b)(2). Importantly, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

A.      **Functional Capacity Exam (FCE) by Charles Wolf, PT**

On February 9, 2024, the Plaintiff presented for an initial physical therapy evaluation, reporting right hip pain and dizziness. AR 2013. Physical therapist Saurabh Patel observed the Plaintiff to have "deficits in cervical and bilateral [range of motion], strength, and balance." *Id.* Mr. Patel assessed the Plaintiff's signs and symptoms as consistent with a diagnosis of cervicogenic headache and bilateral tronchanteric bursitis. *Id.* Mr. Patel also assessed the Plaintiff as presenting with complaints of pain along with noted objective impairments of muscle tightness, joint tightness, decreased range of motion, decreased strength, and decreased stability resulting in functional activity limitations compared with her prior level of function. *Id.* However, the details of the physical exam are not in the record.

On March 1, 2024, Charles Wolf, PT, completed a functional capacity evaluation (FCE), AR 2016–27, indicating that the Plaintiff "would have difficulty functioning even in a sedentary setting," AR 2018. Mr. Wolf's examination showed full range of motion throughout, but he noted "generalized weakness" in all areas of the body. AR 2021. The Plaintiff's grip strength

was in the 50th percentile for her age group, and she was observed to be frequently adjusting

position during the two hours she was sitting for the interview. AR 2022–23. The Plaintiff was

unable to kneel, crouch, crawl, climb, or squat. AR 2023–24. The Plaintiff also completed pain

questionnaires and disability indexes, reporting significant restrictions in the use of her neck and

lower extremities. AR 2019–20, 2032–33.

> The ALJ described the FCE as follows:

> The claimant underwent a Functional Capacity Exam (FCE) in March 2024
> performed by a physical therapist that essentially placed the claimant at a sedentary
> level of functionality (Exhibit 25F). The undersigned was not persuaded by this as
> the bulk of the record, confirmed that there were no ongoing chronic
> musculoskeletal issues, complaints of severe pain, or upper extremity dysfunction.
> Indeed, the claimant had just had an initial physical therapy evaluation on February
> 9, 2024, with complaints of right hip pain and dizziness and only a brief course of
> PT 4-8 weeks was recommended (Exhibit 24F/1–3). While some exercises were
> avoided due to knee pain, it is noted that the claimant experienced a fall on March
> 19, 2024, and had evidence of small joint effusion and moderate medical
> compartmental narrowing from a right knee x-ray (Exhibit 27F/44). Notably, right
> shoulder and rib x-rays were unremarkable (Exhibit 27F42–43).

AR 28. Later in the ALJ's second discussion of Mr. Wolf's FCE in the context of the RFC, the

ALJ again stated that the FCE was unpersuasive, finding that a sedentary RFC is not supported

by the internal exam and is not consistent with the evidence of record. AR 32. The ALJ noted

that the FCE appeared to rely heavily on the claimant's subjective complaints in scoring her

functioning, especially related to pain. *Id.* The ALJ noted that the Plaintiff scored 76 percent on

the neck disability index, which is indicative of the "crippling" (range 60–80), just short of being

bed bound at 80 percent. *Id.* (citing Ex. 25F/5). The ALJ noted that the range of motion testing

appeared to be within normal limits and contrasted it with the finding of generalized weakness.

*Id.* The ALJ then noted that, while the limits may have been supported for the one-time

evaluation "to some degree," the Plaintiff was not even treated for the reported hip pain and

weakness for which she had been evaluated by Mr. Patel in February 2024. *Id.* (citing AR 2013–15 (Ex. 24F)).

The ALJ also found the FCE not consistent with other evaluations or treatment notes. *Id.* As for the FCE finding that the Plaintiff could not sit comfortably for more than two hours, the ALJ cited Dr. Singh's repeated notation that the Plaintiff was always seated comfortably on exam. *Id.* The ALJ noted that the Plaintiff struggled with many postural maneuvers, failing activities like kneeling and squatting. *Id.* However, the ALJ contrasted that with the notations of the consultative examiner and the Plaintiff's primary care clinician that she is independent with daily activities. AR 32–33. The ALJ recognized that the Plaintiff was somewhat limited in April 2022 during the consultative exam; but the ALJ noted that she was just recovering from pneumonia and on oxygen, yet she drove and reported being independent with self-care and did a little cooking and cleaning. AR 33 (citing AR 991 (Ex. 5F/3)).

The Plaintiff makes three criticisms regarding the ALJ's discussion of Mr. Wolf's findings in the FCE. But as argued by the Defendant, the Plaintiff bases the critiques on an incomplete reading of the record, citing only the discussion on page 28 of the ALJ's decision and ignoring the additional discussion on pages 32 and 33. First, the Plaintiff argues that the ALJ mischaracterized Mr. Wolf's objective findings. However, the Plaintiff cites Mr. Patel's February 2024 assessment in comparison, not Mr. Wolf's March 2024 assessment. *See* Pl. Br. 9, ECF No. 16 (citing AR 2013). Thus, this argument is not well taken. And the Plaintiff's new arguments in her reply brief regarding Mr. Patel's assessment are waived. *See United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023) ("Just as undeveloped arguments are waived, so are arguments raised for the first time in reply briefs." (citation omitted)).

Second, the Plaintiff contends that the ALJ's comment that Mr. Patel prescribed "only a brief course of PT 4–8 weeks" suggests that the ALJ is unaware a typical course of physical therapy is six to eight weeks or that the ALJ "played doctor" by determining that the Plaintiff's impairments required only a brief course of PT. This is not an instance of an ALJ substituting her judgment for a physician's opinion. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (finding the ALJ "played doctor" by summarizing the results of an MRI in "barely intelligible medical mumbo jumbo" without submitting it to "medical scrutiny"). Rather, the ALJ simply restated the prescribed treatment based on the record evidence. *See* 20 C.F.R. § 404.1520b (making it the ALJ's responsibility to make findings "about what the evidence shows"). There is no evidence of any other course of treatment, of additional physical therapy, or that the Plaintiff even completed the recommended physical therapy. Therefore, the ALJ's description of the course of treatment is accurate.

Last, the Plaintiff argues that the ALJ ignored four important findings in the FCE report that were favorable to the Plaintiff's claim, namely that: (1) the Plaintiff demonstrated effort considered 100% reliable, AR 2018; (2) the Plaintiff would have difficulty functioning in even a sedentary capacity, *id.*; (3) the Plaintiff sat for two hours during the intake interview and needed to squirm, adjust posture, and/or adjust leg position every 10–15 minutes, AR 2023; and (4) the Plaintiff was unable to kneel, crouch, balance, crawl, or squat, AR 2023–24. As noted above, the ALJ directly discussed all but the first of these findings, which the Plaintiff neither acknowledges nor disputes in her opening brief. *See* AR 32–33. The ALJ also accurately noted that the opinion appeared to rely heavily on the Plaintiff's self-reported scores on pain indexes in contrast with her range of motion that was in normal limits with only notations of generalized weakness. *See Olivas v. Saul*, 799 F. App'x 389, 391 (7th Cir. 2019) ("Further, the ALJ

reasonably gave little weigh to Dr. Crowe's opinions to the extent that they were based on only Olivas's subjective reports of her symptoms . . . ."). As noted by the Defendant, the longitudinal medical record showed full strength and range of motion; normal pulses, sensation, and reflexes, negative straight leg raise; no muscle spasms; normal gait; and frequent observations of no swelling or edema. *See* AR 1003–04, 1032, 1437, 1461, 1592, 1725, 1766, 1776, 2048–49, 2205. A disparity between limitations in an opinion and findings in treatment notes is a proper basis for discounting the opinion. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021).

This is not an instance of the ALJ failing to fully develop the record or failing to articulate her analysis, as suggested by the Plaintiff. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) ("The ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate her analysis so that we can follow her reasoning." (citation omitted)); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." (citation omitted)). The ALJ explained her consideration of the factors in 20 C.F.R. § 404.1520c, including the most important factors of supportability and consistency. And as discussed in Part C below, the ALJ relied on the opinion of the testifying medical expert, Dr. Gaeta, who opined that the FCE was inconsistent with the longitudinal record. AR 33, 57–58.

## B. Opinion of Treating Physician Dr. Singh

The Plaintiff's treating physician, Dr. Singh, provided a medical source statement on March 8, 2024. AR 2035–42. Dr. Singh indicated a number of limitations that would prevent the Plaintiff from performing full-time competitive employment, including that she could only sit for up to three hours at one time before needing to walk around for less than fifteen minutes; while

sitting she would need to elevate her legs to 90 degrees all day; she could only stand or walk for fifteen minutes at one time and less than one hour total of walking in a day, after which she would need to lie down or recline for one hour; she would need three hours of rest per day to address her fatigue; and she could never lift or carry more than ten pounds. AR 2036–39.

The ALJ found the opinion unpersuasive "as it is not supported by this clinician's own treatment notes and is not consistent with the evidence as a whole." AR 33. The ALJ wrote: "For example, Dr. Singh opined that the claimant needs to elevate her legs, but as detailed above, there was no evidence of edema in those exams notes and only statements of generalized edema, [at] times with no use of recommended compression stockings." *Id.* The ALJ continued: "Other inconsistencies further detracted from the opinion's persuasiveness, such as global range of movement limitations wholly inconsistent with this clinician noting no musculoskeletal abnormalities, neurologic loss, gait limitations, or tenderness to palpation." *Id.* The ALJ found: "Turning to the sitting limitations, again noted above, the claimant was comfortable on exam, there was no evidence to substantiate the need for sitting and standing, and recumbent positioning allegedly throughout a normal workday." *Id.* And finally, she wrote: "the undersigned could not justify upper extremity limitations as claimed, all of which were inconsistent with this clinician's normal records." *Id.*

The Plaintiff contends the ALJ made two errors in assessing the opinion. First, the Plaintiff argues that the ALJ mischaracterized the medical evidence when she found the opinion not persuasive because Dr. Singh opined that the Plaintiff needed to elevate her legs but the ALJ noted "[t]here was no evidence of edema in those exams." AR 33. The Plaintiff contends that ankle swelling and pitting edema were noted throughout Dr. Singh's treatment notes; however, several records show "no edema." *See* AR 962 (4/25/2022, 2F/33, "pitting edema"), 970

(6/2/2022, 2F/37, "trace pitting edema in lower extremities bilaterally"), 1794–95 (5/17/2023, 18F/31, ankle swelling improved, "no edema"), 1800 (4/6/2023, 18F/37, ankle swelling), 1803 (4/6/2023, 18F/40, "no edema"), AR 1654 (10/6/2022, 15F/5, taking medication for ankle swelling). Moreover, the Plaintiff fails to recite or distinguish the ALJ's full analysis, quoted above, which also acknowledged the observations of generalized edema, which were at times that she was not wearing the recommended compression stockings. The ALJ has provided a sufficient explanation for finding that a restriction to full-time leg elevation while sitting is not supported by the record.

Second, the Plaintiff asserts that the ALJ failed to explain, according to the regulations, why she discounted Dr. Singh's sitting limitations. However, the ALJ discounted the sitting limitations by citing Dr. Singh's own treatment records that routinely noted on physical examination: "General: no acute distress, sitting in chair, well groomed." *See* AR 934, 945, 954, 962, 970, 976, 1655, 1662, 1671, 1678, 1687, 1695, 1786, 1795, 1803, 1812, 1828, 1836, 2005. While the Plaintiff is correct that the notes did not specifically state that she sat "comfortably" but rather that she was not in "acute distress" during visits for complaints such as sore throat, cough, diabetes, post-nasal drainage, depression, fatigue, and annual wellness visits, the Plaintiff cites no evidence in Dr. Singh's records that she was uncomfortable sitting. Thus, even if it was incorrect for the ALJ to use the word "comfortable," the Plaintiff has not offered evidence to show that the error affects the outcome of the decision. The Plaintiff has not shown reversible error in the ALJ's consideration of Dr. Singh's opinion.

## C.     Medical Expert Dr. Gaeta

At the second hearing, the ALJ obtained testimony from Dr. Gaeta, an impartial medical expert, who had the benefit of reviewing the entire medical record. Dr. Gaeta offered an opinion

on the Plaintiff's physical functional abilities, opining that the Plaintiff could perform light work with postural restrictions to account for, among other things, her severe impairment of obesity and POTS. AR 54. Dr. Gaeta further restricted her to work environments free from pulmonary irritants and extreme temperatures based on the mild abnormalities on pulmonary function testing. AR 54–55. The ALJ was the most persuaded by Dr. Gaeta's opinion, finding it supported by the fact that he reviewed the most evidence and the opinion was consistent with the evidence as a whole. AR 33. The ALJ noted the evidence showing mild respiratory issues on testing since her hospitalization, improved BMI, and well controlled diabetes without ongoing cardiac conditions but allowing for probable POTS. *Id.* The ALJ also noted that Dr. Gaeta is a cardiologist familiar with POTS and the noted limitations. *Id.* The ALJ also found Dr. Gaeta's opinion consistent with the state agency assessments. *Id.*

The Plaintiff does not take issue with any of these permissible reasons given by the ALJ for finding Dr. Gaeta's opinion persuasive. *See Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) (finding that the ALJ was permitted to accept the "reasonable interpretation of the treatment note" offered by the reviewing physician, who was "an expert in Social Security disability evaluation"). Rather, without discussing or even summarizing Dr. Gaeta's testimony or opinion, the Plaintiff argues that the ALJ ignored two isolated statements in Dr. Gaeta's testimony.

First, the Plaintiff asserts that, on cross-examination by the Plaintiff's attorney, "Dr. Gaeta took no issue with the reliability of the FCE." Pl. Br. 13 (citing AR 59–60). The Plaintiff also notes that adoption of the FCE would have resulted in a finding of disabled at step five. At the hearing, counsel asked Dr. Gaeta: "And in this report, the composite representative reliability was 100% reliable. So there was nothing to indicate during the course of the testing that there

would be any question regarding both the efforts or anything else within the context of a functional capacity evaluation. Correct?" AR 59–60. And Dr. Gaeta responded, "I would agree with you on that. It says, 100%, yes." AR 60. He also testified, "[I]f it's 100%, that's the – the readings you get should be reliable, yes." *Id.* But the Plaintiff offers no explanation as to why this testimony undermines Dr. Gaeta's opinion. Earlier, in his testimony, Dr. Gaeta addressed Mr. Wolf's examination, acknowledging that it was a comprehensive exam that showed some abnormalities. AR 57–58. When directly asked about the sedentary finding in the FCE, Dr. Gaeta responded that his opinion is based on what he saw in the entire record. AR 58.

Second, the Plaintiff contends that, regarding Dr. Singh's recommendation that the Plaintiff elevate her legs, Dr. Gaeta agreed that the recommendation was reasonable as he testified: "It is not unreasonable. It is reasonable." AR 66. And the Plaintiff notes that the vocational expert testified that a need for leg elevation would eliminate competitive employment. AR 75. However, the Plaintiff misrepresents Dr. Gaeta's testimony, which was about Dr. Singh's approach, rather than the recommendation itself. The attorney asked: "And if the treating physician, after having noted [edema], made a recommendation for leg elevation while seated, is that an unreasonable *approach* to edema in the lower extremities?" AR 66 (emphasis added). To which Dr. Gaeta responded, "It is not unreasonable. It is reasonable." *Id.* Elsewhere in his testimony, Dr. Gaeta acknowledged the isolated observations of swelling or edema that the Plaintiff cited above in relation to Dr. Singh's opinion. AR 63–64. But he noted that the treatment notes did not quantify the degree of swelling, there was no aggressive treatment for leg swelling, and the swelling occurred when the Plaintiff was not following the recommended treatment for compression socks. *Id.* This testimony, which the Plaintiff ignores, supports Dr. Gaeta's opinion that the Plaintiff could perform light work without the need to elevate her legs.

14

Neither statement identified by the Plaintiff calls into question the ALJ's discussion of Dr. Gaeta's opinion or its reliability, and neither constitutes an entire line of evidence as suggested by the Plaintiff. *See* Pl. Br. 13 (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (reiterating that an ALJ "may not dismiss a line of evidence contrary to the ruling" (citations omitted))). The Plaintiff has not identified any reversible error in the ALJ's evaluation of Dr. Gaeta's expert medical opinion, and the ALJ's reliance on Dr. Gaeta's opinion provides substantial support for her decision.

## CONCLUSION

For the reasons stated above, the Court DENIES the relief sought in the Plaintiff's Brief [ECF No. 16] and AFFIRMS the decision of the Commissioner of the Social Security Administration. The Court DIRECTS the Clerk of Court to ENTER FINAL JUDGMENT stating:

> Judgment is entered in favor of the Defendant Commissioner of Social Security and against the Plaintiff Connie Sue Coggins, who shall take nothing by way of the complaint.

SO ORDERED on June 1, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

15